PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KEELAN HARRIS, | ) | CASE NO. 4:16CV270 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, *et al.*, | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** [Resolving ECF Nos. 34, 40, 41, |
| Defendants. | ) | 42, 44, 45] |

Pending before the Court are Plaintiff's Motion for Appointment of Counsel (ECF No. 34), Motion to Amend his Complaint (ECF No. 40) and Motion to Extend Time to Serve (ECF No. 45); Defendants Marilou Burns, Steven Grimm, Ralph Hanson, Glen Johnson, J.L. Norwood, Bill Story, and Harrell Watts' (the "Federal Defendants") Motion to Dismiss (ECF No. 41); Defendants Thomas M. Baronzzi, Anthony J. Dattillio, James A. Fredericka, and Emily Clark Weston's (the "County Defendants") Motion for Judgment on the Pleadings (ECF No. 42); and Defendants Mike DeWine and John Kasich's ("State Defendants") Motion to Dismiss (ECF No. 44). For the following reasons, the Court denies Plaintiffs' Motions and grant Defendants' Motions.

## I. Background

Plaintiff Keelan Harris, a prisoner at FCI Elkton, sought to marry his then-fiancée, Marcela Bedoya. ECF No. 1 at PageID #: 3, ¶ 21. Although he properly initiated FCI Elkton's internal marriage procedures, he was informed that he could not obtain a marriage license. *Id.* at PageID #: 3–4, ¶¶ 21–27. Pursuant to Ohio Rev. Code § 3101.05, parties seeking a marriage

license must "personally appear in the probate court within the county where either resides, or, if neither is a resident of this state, where the marriage is expected to be solemnized." Ohio Rev. Code § 3101.05. The local clerk of courts would not send an employee to the prison to issue a license and the prison declined Plaintiff's request for an escorted trip to the probate court. ECF No. 1 at PageID#: 4–5, ¶¶ 28–42. Because there was no other way for a prisoner to satisfy the personal-appearance requirement, Plaintiff was unable to obtain a marriage license.

Plaintiff sought relief through the prison's grievance process, and wrote letters to state and federal officials seeking assistance. ECF No. 1 at PageID#: 4–5, ¶¶ 28–42. When Plaintiff's grievances, and their appeals, were denied, Plaintiff brought suit under 42 U.S.C. § 1983 against various state and federal officials and employees contending that Defendants violated his constitutional right to be married. ECF No. 1 at PageID #: 7–8, ¶¶ 47–57. Plaintiff seeks declaratory, injunctive, and monetary relief. *Id.* at PageID #: 12–13, ¶¶ 80–87.

The Court reviewed Plaintiff's Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A). After dismissing Plaintiff's claims against the United States, United States Attorney General Loretta Lynch, and Charles Samuel Jr., the Court permitted Plaintiff's action to proceed against all other Defendants. ECF No. 7 at PageID #: 140.

The Court appointed *pro bono* counsel to represent Plaintiff. ECF No. 11. Because the Columbiana County, Ohio Court of Common Pleas had recently acquired videoconference technology, Plaintiff's counsel and Defendants were able to devise a program by which inmates could obtain marriage licenses *via* video conference. Defendant Judge Thomas M. Baronzzi, who had previously denied Plaintiff's request to appear *via* video conference, vacated his order and granted Plaintiff's request in light of the court's new technological acquisition. ECF No.

36-1 at PageID #: 336.  The Federal and County Defendants confirmed that the video conference connection was successfully tested, FCI Elkton updated its Institution Supplement on Marriage accordingly, and the updated Supplement was issued to prisoners.  ECF Nos. 46, 54.

Plaintiff notified the Court that he no longer intended to wed.  ECF No. 38.  Plaintiff moved to amend his Complaint and extend time to serve.  ECF Nos. 40, 45.  The Federal Defendants and State Defendants moved to dismiss Plaintiff's Complaint.  ECF Nos. 41, 44. The County Defendants moved for judgment on the pleadings.  ECF No. 42.

## II.  Claims for Declaratory and Injunctive Claims Against All Defendants

All Defendants argue that Plaintiff's claims for injunctive and declaratory relief are moot, and, therefore, the Court lacks subject-matter jurisdiction.  ECF No. 41-1 at PageID #: 362–64; ECF No. 42-1 at PageID #: 374–76; ECF No. 44 at PageID #: 412–14.  For the following reasons, the Court grants the Motions to Dismiss and the Motion for Judgment on the Pleadings regarding Plaintiff's claims for declaratory and injunctive relief.

Federal Rule of Civil Procedure 12(b)(1) allows dismissal of claims for "lack of jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1).   "Article III, § 2, of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,' which restricts the authority of federal courts to resolving 'the legal rights of litigants in actual controversies.'"  *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013) (quoting *Valley Forge Christian College v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982)).  Otherwise put, federal courts do not have jurisdiction over cases that are "moot," meaning those in which the plaintiff no longer has a legally cognizable interest in the outcome of the action.  *Id.*; *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453,

458 (6th Cir. 1997) (en banc).  A controversy must exist throughout the course of litigation.

*Alvarez v. Smith*, 558 U.S. 87, 92 (2009).  "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Symczyk*, 133 S. Ct. at 1528 (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78 (1990)).

"The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 550 (6th Cir. 2003) (quoting *McPherson*, 119 F.3d at 458).  A reviewing court will determine not whether the complained-of activity has ceased, but whether it can be properly remedied by the court. *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 458 (6th Cir. 2004).  "[A] case is moot only where no effective relief for the alleged violation can be given." *Id.*

Plaintiff seeks a preliminary and permanent injunction ordering Defendants to issue a marriage license to Plaintiff and his fiancée, assist Plaintiff in obtaining a marriage license and completing the marriage ceremony, as well as a declaration that Ohio Rev. Code § 3101.05(A)'s "personal appearance" requirement is unconstitutional.  ECF No. 1 at PageID #: 12, ¶¶ 80–82.  Because Plaintiff no longer intends to wed, the Court is unable to issue any declaratory or injunctive relief that would affect Plaintiff or provide him with relief.  Such an order would be purely advisory.

Although Plaintiff no longer intends to wed, he argues that his claims for declaratory and injunctive relief are not moot because the intent *not* to marry is a direct result of Defendants' actions; Plaintiff may decide to marry in the future, and Defendants could deny his marriage or

4

any inmate's marriage based on any perceived "security concerns" they see fit; and Plaintiff's injury is "capable of repetition, yet evading review." ECF No. 40. These arguments are either inapplicable to this case or insufficient to overcome the mootness of Plaintiff's claims.

First, that Plaintiff's decision not to marry was influenced by Defendants' actions is of no matter to the case's mootness. Because Plaintiff does not intend to marry, ordering Defendants to allow Plaintiff to marry will not afford him any relief. To the extent Plaintiff argues that the case falls within the "voluntary cessation" exception to mootness, this argument is without merit. Ordinarily, a defendant's voluntary cessation of an illegal activity is insufficient to render litigation moot. *Friends of the Earth v. Laidlaw Environmental Svcs.*, 528 U.S. 167, 169 (2000) (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). "[I]f it did, the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.'" *Id.* (citing *City of Mesquite*, 455 U.S. at 289, n.10). In this instance, it is not Defendants' voluntary conduct, but Plaintiff's decision not to marry, that moots the case.

Plaintiff's arguments that he might decide to marry in the future, and that a future marriage application might be denied based on "security concerns," is too speculative a harm to permit Plaintiff's case to move forward. "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical . . . ." *Laidlaw*, 528 U.S. at 181. Plaintiff's harm assumes a series of events—that he decides to remarry, that he applies for a marriage license while still in prison, and that Defendants illegally deny his marriage license—that are too hypothetical and speculative to create the type of "actual controversy" over which this Court would have jurisdiction. Similarly, the Court does not have jurisdiction over

Plaintiff's argument that other inmates' marriage requests might be denied. "Generally, [a litigant] must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). In the event that another inmate is denied the right to marry, that inmate will have to bring his own suit, unless Plaintiff can demonstrate some stake in that litigation or a basis for third-party standing. *Id.* at 130 (permitting third-party standing only when the party asserting the right has a "close" relationship with the person who possesses the right, and the possessor's ability to protect his own interest is hindered).

Finally, Plaintiff's argument that the case is of the type "capable of repetition, yet evading review" is without merit. In order to satisfy this exception to the mootness doctrine, a plaintiff must show "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration; and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Chirco v. Gateway Oaks, L.L.C.*, 384 F.3d 307, 309 (6th Cir. 2004) (citing *Weinstein v. Bradford*, 423 U.S. 147, 148 (1975)).

Because Plaintiff's injury fails on the first prong, there is no need to consider the second prong. Plaintiff's injury is that he was prohibited from marrying, in violation of his right to marry. In the event Plaintiff is barred from securing a marriage license again, there is nothing about this injury that is so inherently brief that it could not wait out the course of litigation. For example, if not for Plaintiff and his fiancée's decision not to marry, they would still remain affianced to this day, and could remain engaged until the Court renders its judgment. In contrast, a woman's pregnancy, *Roe v. Wade*, 410 U.S. 113, 125 (1973) or a trial court's order banning

news media access to a specific trial, *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 546–47 (1975) will not outlast even the fastest litigation, no matter what the plaintiff does to keep the case from becoming moot. Accordingly, Plaintiff's injury does not fall within this exception to the mootness doctrine.

For these reasons, the Court finds that Plaintiff's claims for declaratory and injunctive relief are moot, and dismisses, without prejudice, any claims for declaratory and injunctive relief for lack of subject-matter jurisdiction. Accordingly, only Plaintiff's claims for monetary relief remain.

### III. Claims for Monetary Relief Against Federal Defendants and Plaintiff's Motion to Extend Time to Serve

The Federal Defendants move to dismiss Plaintiff's claims against them, in their official and individual capacities, for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). The party resisting a Rule 12(b)(2) motion to dismiss bears the burden of demonstrating that personal jurisdiction exists. *Air Prods. and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). If the court rules on the motion to dismiss without an evidentiary hearing, the resisting party need only make a *prima facie* showing that jurisdiction exists. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

Any claims for monetary relief against the Federal Defendants are dismissed for lack of personal jurisdiction, as Plaintiff has failed to properly serve the Federal Defendants. A plaintiff filing a *Bivens* claim against a federal officer in her individual capacity must perfect service on the United States and personal service on each defendant within 90 days of filing the complaint. Fed. R. Civ. P. 4(i)(3); 4(m). Lack of proper service is a jurisdictional defect, and "without such personal service, a district court is without jurisdiction to render judgment against the

defendant." *Harris v. City of Cleveland*, 7 F. App'x 452, 456 (6th Cir. 2001) (citing *Friedman v. Estate of Presser*, 929 F.2d 1151, 1157 (6th Cir. 1991) and *Ecclesiastical Order of Ism of Am, Inc. v. Chasin*, 845 F.2d 113, 116 (6th Cir. 1988)).  Unless the plaintiff can show good cause as to why service was not perfected, the case must be dismissed.  *Abel v. Harp*, 122 F. App'x 248, 250 (6th Cir. 2005) (quoting *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996)).

## A. Service on Defendants Burns and Hanson

Plaintiff failed to properly serve Defendants Burns and Hanson individually.  To perfect personal service on a United States officer, the plaintiff must comply with Rule 4(i)(3) by serving the United States and serving the officer under Rule 4(e), (f), or (g).  Fed. R. Civ. P. 4(i)(3).  Rule 4(f) and 4(g) concern service on officers in a foreign country and on minors or incompetent persons, neither of which is applicable in this case.  Accordingly, only service pursuant to Rule 4(e) is relevant.  Rule 4(e) instructs:

> (e) Serving an Individual Within a Judicial District of the United States.  Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:
>
> > (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> >
> > (2) doing any of the following:
> >
> > > (A) delivering a copy of the summons and of the complaint to the individual personally;
> > >
> > > (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> > >
> > > (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).  The Court granted Plaintiff's Motion to Proceed *in forma pauperis* on July 22, 2016.  ECF No. 6 at PageID #: 132.  Plaintiff had 90 days—until October 11, 2016—to serve the Federal Defendants.  Fed. R. Civ. P. 4(m).  Plaintiff's attempts to serve Defendants Burns and Hanson *via* mail addressed to FCI Elkton were returned as undeliverable because the Defendants are no longer employed at FCI Elkton.  ECF No. 24.  Plaintiff made no attempt to correct these defects or effect service on these Defendants until February 15, 2017, four months after the 90-day period to serve Defendants ended.  Therefore, Plaintiff's claims against Defendants Burns and Hanson are dismissed, without prejudice, as the Court does not have personal jurisdiction over the unserved Defendants.

**B.  Service on the United States**

Plaintiff has not properly served the Federal Defendants, as he did not serve the United States.  To serve the United States, a plaintiff must:

   (A)

      (i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought—or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—or

      (ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;

   (B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.

Fed. R. Civ. P. 4(i)(1)(A), (B).  The docket does not reflect that the United States Attorney's Office for the Northern District of Ohio or the Attorney General have been served with a copy of

Plaintiff's summons and complaint.  Accordingly, all Federal Defendants have not been properly served, and are dismissed, without prejudice, for lack of personal jurisdiction.

### C.  Plaintiff's Motion to Extend Time to Serve

Plaintiff moves to extend his time to serve the United States and Defendants Burns and Hansen.  ECF No. 45.  As justification, Plaintiff contends that he "did not understand what proper service was until after [the Telephonic Status Conference] on February 10th, 2017." *Id. at PageID #: 420*.  He states that he "took [the] conference on February 10th, 2017 as a "NOTICE OF FAILURE TO SERVE." *Id*.  Plaintiff also argues that because the Federal Defendants had appeared, they had notice of the suit.  *Id*.  Furthermore, he contends that his attorney never informed him that he needed to serve the United States.  *Id*.

Plaintiff has not demonstrated good cause for his failure to timely serve the Federal Defendants, and has been given reasonable time to perfect service.  Generally, Fed. R. Civ. P. 4(i)(4) requires courts to allow a party a "reasonable time to cure its failure to . . . (B) serve the United States under Rule 4(i)(3), if the party has served the United States officer or employee." Fed. R. Civ. P. 4(i)(4).  This Rule does not apply to Defendants Hanson and Burns, who have not been personally served.  *See* Fed. R. Civ. P. 4(i)(4)(B) (requiring time to cure the defect only "if the party has served the United States officer or employee.").  As for the rest of the Federal Defendants, the Court has already allowed Plaintiff a "reasonable time" to perfect service. "Reasonable time" begins to run at the time Plaintiff is notified of the failure.  Fed. R. Civ. P. 4 advisory committee's notes to 2000 amendment.  Although Plaintiff argues that he was only notified of the failure at the February 10, 2017 Telephonic Status Conference, the Federal Defendants notified Plaintiff of the lack of service through their filings on multiple occasions.

[ECF No. 21](#) (August 26, 2016 attorney appearance noting lack of service); [ECF No. 25](#)

(September 12, 2016 Joint Status Report noting lack of service).

Plaintiff does not suggest another reason to permit additional time to perfect service. Although the Federal Defendants have appeared in the suit, these appearances have been without waiver of the defects in service. The Federal Defendants' notice of the suit does not substitute proper service. *Friedman v. Estate of Presser*, 929 F.2d 1151, 1155 (6th Cir. 1991). Nor does the fact that Plaintiff is proceeding *in forma pauperis* relieve him of his duty to serve Defendants. *Byrd*, 94 F.3d at 219. Finally, Plaintiff's counsel's failure to properly serve the United States is unfortunate, but does not excuse the lack of service. Therefore, the Court denies Plaintiff's Motion to Extend Time to Serve.

### D. Summary

For the foregoing reasons, the Court grants the Federal Defendants' Motion to Dismiss and denies Plaintiff's Motion to Extend Time to Serve. Plaintiff's claims against the Federal Defendants are dismissed without prejudice.

### IV. Claims for Monetary Relief Against County Defendants

The County Defendants move for judgment on the pleadings. Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings under Rule 12(c) is reviewed under the same standard applicable to a motion to dismiss under Rule 12(b)(6). *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). "To survive a [Rule

12(b)(6)] motion to dismiss, [the complaint] must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Traverse Bay Area Intermediate School Dist. v. Michigan Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (*quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). A court may dismiss a claim if its finds on the face of the pleading that "there is an insurmountable bar to relief indicating that the plaintiff does not have a claim[,]" *Ashiegbu v. Purviance*, 76 F. Supp.2d 824, 828 (S.D. Ohio 1998), *aff'd* 194 F.3d 1311 (6th Cir. 1999), *cert. denied*, 529 U.S. 1001 (2000).

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (*quoting Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008)). The Court "'must construe the complaint in the light most favorable to [the] plaintiff[.]'" *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (*quoting League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)).

### A. Defendant Dattillio

Defendant Anthony J. Dattillio, Clerk of Court for the Columbiana County, Ohio Court of Common Pleas, (inaccurately identified as a Columbiana County probate judge) is dismissed as he has no connection to the Columbiana Probate Court, and lacks the ability or authority to issue a marriage license, a duty assigned to probate court judges, not clerks. *See* Ohio Rev. Code § 3101.05. Plaintiff alleges that Defendant Dattillio ignored Plaintiff's request for assistance in obtaining a marriage license, and seeks an injunction ordering Defendant to issue Plaintiff a

marriage license without requiring his personal appearance. ECF No. 1 at PageID #: 4, ¶ 33. Because Defendant Dattillio is not a judge, and is powerless to issue marriage licenses, there is no relief that the Court can provide Plaintiff. Accordingly, the Court dismiss all claims against Defendant Dattillio. *See Ashiegbu*, 76 F. Supp.2d at 828.

### B. Defendants Fredericka, Weston, and Baronzzi

Plaintiff contends that he sought assistance from the remaining Columbiana County Defendants—Trumbull County, Ohio Probate Judge James A. Fredericka, Trumbull County Probate Court Staff Attorney Emily Clark Weston, and Columbiana County Probate Judge Thomas M. Baronzzi—but they ignored his request, improperly denied his request for a marriage license, and improperly denied his request for an accommodation. ECF No. 1 at PageID #: 4–6, ¶¶ 33, 41–42. For the following reasons, Plaintiff's claims against these Defendants are dismissed.

### i. Sovereign Immunity

Plaintiff's claims against Defendants in their official capacities are barred by the Eleventh Amendment. "[A] suit against a governmental officer 'in his official capacity' is the same as a suit 'against [the] entity of which [the] officer is an agent.'" *McMillian v. Monroe Cty.*, 520 U.S. 781, 785 n.2 (1997) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). These suits against states or their agencies are barred by the Eleventh Amendment, "regardless of the relief sought." *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Lawson v. Shelby Cty.*, 211 F.3d 331, 335 (6th Cir. 2000) (noting that he Eleventh Amendment prohibits suits against states "whether for injunctive, declaratory or monetary relief" in federal courts). For these reasons, Plaintiff's claims against the Defendants

their official capacities are dismissed, without prejudice. *Triplett v. Connor*, 109 F. App'x 94, 96 (6th Cir. 2004) (citing *Mumford v. Basinski*, 105 F.3d 264, 268–70 (6th Cir. 1997)) ("The district court also did not err in concluding that the state is entitled to Eleventh Amendment immunity to the extent that Triplett sued Judge Connor in his official capacity."). Accordingly, only Plaintiff's claims against the judges in their individual capacities remain.

### ii. Absolute Immunity

Defendants Fredericka, Weston and Baronzzi are entitled to absolute judicial immunity from all claims against them in their individual capacities in their roles as judges, or in the case of Defendant Weston, as a judicial appointee. Judicial officers are absolutely immune from civil suits for money damages. *Mireles v. Waco*, 502 U.S. 9, 9 (1991); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). Absolute immunity is overcome only in two situations: (1) when the conduct alleged is performed at a time when the defendant is not acting in a judicial capacity; or (2) when the conduct alleged, although judicial in nature, is taken in complete absence of all subject-matter jurisdiction of the court over which he or she presides. *Mireles*, 502 U.S. at 11–12; *Barnes*, 105 F.3d at 1116; *see also Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978). This immunity extends to those who "act[] as the judge's designee, and who carr[y] out a function for which the judge is immune." *Fields v. Lapeer Cty Cir. Ct.*, 3 F. App'x 277, 378 (6th Cir. 2001) (citing *Bush v. Rauch*, 38 F. 3d 842, 847 (6th Cir. 1994); *Foster v. Walsh*, 864 F.2d 416, 417–18 (6th Cir. 1988) (extending doctrine to court clerk)).

Plaintiff has not demonstrated a basis for overcoming Defendants' absolute immunity. First, Defendants were acting in a judicial capacity when they denied Plaintiff's requests for a marriage license and for an accommodation allowing him to obtain a marriage license without

appearing in person, as required by statue. The determination of whether an action is performed in a defendant's judicial capacity depends on the "nature" and "function" of the act. *Mireles, 502 U.S. at 13*; *Stump 435 U.S. at 362.* Looking first to the "nature" of the act, the Court must determine whether the conduct giving rise to the claim is a function generally performed by a judge. *Stump, 435 U.S. at 362.* This inquiry does not involve a rigid scrutiny of the particular act in question, but rather requires only an overall examination of the judge's alleged conduct in relation to general functions normally performed by judges. *Mireles, 502 U.S. at 13.* Second, an examination of the "function" of the act requires the Court to assess whether Plaintiff dealt with the judicial officers in their respective judicial roles. *Id.*

Rejecting a marriage license is a judicial act.[1] *See Brookings v. Clunk, 389 F.3d 614, 623 (6th Cir. 2004)* (recognizing absolute immunity for probate judge's actions relating to his refusal to issue a marriage license). In fact, Ohio Rev. Code § 3101.05 expressly states that this act must be performed by a judge. Accordingly, this cannot serve as a basis for overcoming the judges' absolute judicial immunity.

Plaintiff has not demonstrated that the judges acted in the absence of jurisdiction either. When the immunity of the judge is at issue, the scope of the judge's jurisdiction is to be broadly

---

[1] Plaintiff cites a number of cases in support of his argument that the issuance of a marriage license is a ministerial act not subject to absolute immunity. ECF No. 49 at PageID #: 439. These non-binding cases can be distinguished from the case at hand. Unlike the laws at issue in the cases Plaintiff cites, Ohio's law requires a judge, not a clerk of court, to issue a marriage license. Ohio Rev. Code. § 3101.05(A). Furthermore, Plaintiff did not ask Defendants to merely administer a marriage license. Instead, Plaintiff argues that the Defendants should have gone beyond the law's requirements by traveling to FCI Elkton to administer the marriage license, or circumvented the law by waiving the personal appearance requirement. This sort of discretionary action is protected by immunity.

construed.  *Stump*, 435 U.S. at 356–57.  A judge will be not deprived of immunity even when the action was performed in error, was done maliciously, or was in excess of authority.  *Id.*  Actions taken in complete absence of all jurisdiction are those acts which are clearly outside of the subject-matter jurisdiction of the court over which the judge presides.  *King v. Love*, 766 F.2d 962, 965 (6th Cir. 1985); *see Barnes*, 105 F.3d at 1122.  That a judicial officer acted in excess of authority does not mean that he or she acted in clear absence of all jurisdiction.  *See Sevier v. Turner*, 742 F.2d 262, 271 (6th Cir. 1984).

In this case, as probate court judges, Judges Baronzzi and Fredericka have jurisdiction to review requests for marriage licenses.  That authority comes directly from the statute at issue, Ohio Rev. Code § 3101.05, which states: "[a] probate judge may grant a marriage license under this section at any time after the application is made."  Accordingly, by reviewing and acting upon Plaintiff's request for a marriage license, the Defendants were acting within their jurisdiction.

Because there is no basis to overcome the judges' absolute immunity, the Court dismisses any claims against them in their individual capacity related to their judicial functions.  The Court also finds that Defendant Burns is protected by absolute immunity as well.  As Judge Fredericka's designee, she lacks independent authority.  Any decisions she issued regarding the Court's policy must be approved by Judge Fredericka, and are, therefore, afforded the same absolute immunity.  *Fields v. Lapeer Cty. Circuit Court*, 3 F. App'x 377, 378 (6th Cir. 2001) (citing *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) and *Foster v. Walsh*, 864 F.2d 416, 417–18 (6th Cir. 1988)) (a person acting as a judge's designee and carrying out a function for which the judge is immune is entitled to the same immunity as the judge).

16

### iii. Qualified Immunity

To the extent that the Defendants' denial of assistance to a marriage license applicant can be deemed an administrative function, the Defendants are protected by qualified immunity. Qualified immunity is an affirmative defense available to government officials. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). In analyzing a qualified immunity defense, the Sixth Circuit asks whether "the plaintiff has shown that a constitutional violation occurred" and whether "the right was clearly established at the time of the violation." *Santiago v. Ringle*, 734 F.3d 585, 593 (6th Cir. 2013) (quoting *Harris v. City of Circleville*, 583 F.3d 356, 365 (6th Cir. 2009)). The Supreme Court has elaborated on what is meant by clearly established: "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1985).

Plaintiff argues that Defendants should have waived the personal appearance requirement and issued his marriage license, or otherwise accommodated his request. Although Defendants concede that the right to marry is a clearly established constitutional right, ECF No. 42-1 at PageID #: 383, the right to have the personal appearance requirement waived was not clearly established. In fact, Ohio Rev. Code § 3101.05(A) only permits waiver of the personal appearance requirement for illness or other physical disability. It was reasonable for the Defendants to infer from the Ohio legislature's decision not to include other exceptions that no other exceptions were permitted. *See States v. Droste*, 83 Ohio St. 3d 36, 36 (1998) (citations omitted) ("Under the general rule of statutory construction *expressio unius est exclusio alterius*, the expression of one or more items of a class implies that those not identified are to be

excluded.").  Moreover, although the Defendants were permitted to take additional measures to overcome the personal appearance requirement, the law does not obligate Defendants to do so.[2]

Therefore, the Court finds that the Defendants are protected by qualified immunity from any claims arising out of their administrative actions.

### iv.  Failure to Plead

Even if the Defendants were not immune, Plaintiff has failed to plead facts to support a claim upon which relief can be granted.  To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that he was denied a right secured by the Constitution or the laws of the United States, and that the deprivation was permitted by one acting under color of state law. *Leach v. Shelby Cty Sheriff*, 891 F.2d 1241, 1244 (6th Cir. 1989).  Plaintiff does not allege that the judges deprived him of a federally protected right, just that the judges made a judicial decision to deny his request for a marriage license exception.  Although this decision might have been in error, "[a]n incorrect decision by the Ohio court does not constitute a deprivation of due process of law that the federal courts must redress." *Agg v. Flanagan*, 855 F.2d 336, 339 (6th Cir. 1988).  Instead, a party seeking to correct a judicial mistake should do so by appeal. *Id*.  "It is only the claim that Ohio's procedures do not allow a vindication of [Plaintiff's] rights that

---

[2]  Plaintiff argues that *Toms v. Taft*, 338 F.3d 519 (6th Cir. 2003) requires state officials to assist inmates in their pursuits of marriage.  ECF No. 49 at PageID #: 441–42. Plaintiff overstates *Toms*' holding.  In *Toms*, the Sixth Circuit held that the prison officials' "refusal to aid a prisoner in exercising his right to marry, where such refusal completely frustrates the right, can amount to a 'prison regulation' under *Turner v. Safley*, 482 U.S. 78 (1987)[,]" and that a refusal to aid a prison in marrying "must be reasonably related to legitimate penological interests." *Id.* at 525.  The court did not go so far as to hold that the judges and court officials have an affirmative duty to aid a prisoner in marrying.

18

states a cognizable due process violation." *Id*.  Accordingly, Plaintiff's claims against the County Defendants are dismissed, as they do not state a claim for which relief can be granted.

### v.  Summary

For the foregoing reasons, the Court grants the County Defendants' Motion for Judgment on the Pleadings.  Plaintiff's claims against the County Defendants are dismissed, with prejudice.

## V.  Claims for Monetary Relief Against State Defendants

Defendants Ohio Governor John Kasich and Ohio Attorney General Mike DeWine move to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(1), arguing that the Court lacks subject-matter jurisdiction over Plaintiff's claim.  Federal Rule of Civil Procedure 12(b)(1) allows dismissal for "lack of jurisdiction over the subject matter" of claims asserted in the complaint.  Fed. R. Civ. P. 12(b)(1).   A district court lacks subject-matter jurisdiction when the allegations of a complaint are "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (citing *Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974)).  Plaintiffs bear the burden of establishing that jurisdiction exists.  *Madison–Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996).  Lack of subject-matter jurisdiction is a non-waivable, fatal defect.  *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir. 1990).

Plaintiff's claims for monetary damages against Defendant Ohio Governor John Kasich and Defendant Ohio Attorney General Mike DeWine in their official capacities are barred by Eleventh Amendment immunity.  Plaintiff cannot sue the State Defendants in their individual capacities either, because they do not have a sufficient connection to the enforcement of the challenged act.

## A.  Official Capacity

"[A] suit against a governmental officer 'in his official capacity' is the same as a suit '"against [the] entity of which [the] officer is an agent."'" *McMillian v. Monroe Cty*, 520 U.S. 781, 785 n.2 (1997) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  These suits against states or their agencies are barred by the Eleventh Amendment, "regardless of the relief sought."  *Puerto Rico Aquaduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Lawson v. Shelby Cty.*, 211 F.3d 331, 335 (6th Cir. 2000) (noting that he Eleventh Amendment prohibits suits against states "whether for injunctive, declaratory or monetary relief" in federal courts).  Ohio "has neither constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts."  *Washington v. McCoy*, No. 1:12CV628, 2014 WL 1819268, at *7 (S.D. Ohio 2014) (citing *Johns v. Supreme Court of Ohio*, 753 F.2d 524, 527 (6th Cir. 1985)); *see Carmichael v. City of Cleveland*, 881 F. Supp. 2d 833, 844 (N.D. Ohio 2012) *rev'd on other grounds* 571 F. App'x 426 (6th Cir. 2014) (Eleventh Amendment bars suit seeking monetary and injunctive relief against the Ohio Department of Rehabilitation and Correction because Ohio has not consented to suit).  Accordingly, any claims against Defendants Kasich and DeWine in their official capacities are barred by the Eleventh Amendment.

## B.  Individual Capacity

The United States Supreme Court has recognized an exception to sovereign immunity, allowing suits seeking prospective relief against state officials in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991); *Ex Parte Young*, 209 U.S. 123 (1908).  These state officials "must have some connection with the enforcement" of the allegedly unconstitutional act

or conduct of which the plaintiff complains.  *Young*, 209 U.S. at 157; *Floyd v. Cty of Kent*, 454 F. App'x 493, 499 (6th Cir. 2012).

In this case, Plaintiff complains that he sent letters to the State Defendants, and they did nothing to help him in his pursuit of a marriage license.  ECF No. 1 at PageID #: 5, ¶¶ 34, 39; ECF No. 49 at PageID #: 444.  He does not contend that Defendants have any role in enforcing Ohio Rev. Code § 3101.05, and has not demonstrated that Defendants were "personally involved" in the litigation to the point that they could be subject to individual liability.  Merely receiving a letter is not enough to establish personal liability.  *Top Flight Entm't , Ltd. v. Schuette*, 729 F.3d 623, 634–35 (6th Cir. 2013); *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (supervisory authority cannot be based on failure to act, but instead must be based on active, unconstitutional behavior).   Furthermore, Defendants have no authority over the operation, management, or regulation of the Federal Bureau of Prisons.  *See* 18 U.S.C. § 4042 (authorizing the United States Attorney General to manage and regulate all federal penal and correctional institutions).   Nor can Plaintiff rely on Defendants' general obligation to enforce the laws of the state to overcome Eleventh Amendment Immunity.  *Children's Healthcare is a Legal Duty v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996) (quoting *1st Westco Corp. v. Sch. Dist. of Philadelphia*, 6 F.3d 108, 113 (3d Cir. 1993) ("General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law.").  Similarly, the doctrine of *respondeat superior* does not impose personal liability on the State Defendants in a Section 1983 case.  *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008). Accordingly, Plaintiff has not demonstrated that the State Defendants were connected with the enforcement of the allegedly unconstitutional marriage procedures, and the Court dismisses

Plaintiff's claims against the State Defendants, without prejudice. *See Children's Healthcare is a Legal Duty*, 92 F.3d at 1416–17 (dismissing claims against Ohio Attorney General who had no connection to the enforcement of the challenged statutes); *Akron Ctr. for Reprod. Health v. Rosen*, 633 F. Supp. 1123, 1130 (N.D. Ohio) (dismissing Ohio Governor and Attorney General under Eleventh Amendment, because they had no connection to the enforcement of a statute), *aff'd on other grounds*, 854 F.2d 852 (6th Cir. 1988), *rev'd on other grounds*, 497 U.S. 502 (1990).

Plaintiff argues that *Toms v. Taft*, 338 F.3d 519 (6th Cir. 2003) requires state officials, such as the Ohio Governor, to assist inmates in marrying. Plaintiff misunderstands *Toms*. In *Toms*, the Sixth Circuit considered whether qualified immunity protected the defendant prison officials from allegations that they violated an inmate's right to marry. *Toms*, 338 F.3d at 526. The Sixth Circuit held that the prison officials' "refusal to aid a prisoner in exercising his right to marry, where such refusal completely frustrates the right, can amount to a 'prison regulation' under *Turner v. Safley*, 482 U.S. 78 (1987)[,]" and that a refusal to aid a prison in marrying "must be reasonably related to legitimate penological interests." *Id.* at 525. The court did not go so far as to hold that the Governor has an affirmative duty to aid a prisoner in marrying. Accordingly, Plaintiff's argument is without merit.

For these reasons, the Court dismisses all claims against the State Defendants, without prejudice.

## VI.  Plaintiff's Motion to Amend Complaint (ECF No. 40) and Motion to Appoint Counsel (ECF No. 34)

Plaintiff requests leave to Amend his Complaint.  ECF No. 40.  Although Fed. R. Civ. P. 15 instructs that leave to amend should be "freely" granted "when justice so requires," a court need not grant leave to amend if amending would be futile.  *Kottmyer v. Maas*, 436 F.3d 684, 692 (6th Cir. 2006).  As described above, Plaintiff's claims against these Defendants are barred by lack of personal jurisdiction and improper service, as well as various immunities, meaning that an amendment would likely be unsuccessful.  Accordingly, the Court denies Plaintiff's Motion to Amend.

Similarly, the Court denies Plaintiff's Motion to Appoint Counsel.  ECF No. 34.  As there are no remaining claims, appointment of counsel would be futile.

## VII.  Conclusion

For the foregoing reasons, the Court grants the Federal and State Defendants' Motions to Dismiss, the County Defendants' Motion for Judgment on the Pleadings, and the State Defendants' Motion to Dismiss.  ECF Nos. 41, 42, 44.  Plaintiff's Motions to Amend and to Appoint Counsel are denied.  ECF Nos. 34, 40.

IT IS SO ORDERED.

 August 21, 2017                             */s/ Benita Y. Pearson*
Date                                        Benita Y. Pearson
                                            United States District Judge